IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMI REBSOM, | CV 20-01-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| STEVE KUNNATH, in his official and individual capacities; CITY OF LIVINGSTON, MONTANA; and JAY PORTEEN, in his official and individual capacities, | |
| Defendants. | |

Plaintiff, Jami Rebsom ("Rebsom"), brings this action against Defendants Steve Kunnath ("Kunnath"), the City of Livingston, Montana ("Livingston"), and Jay Porteen ("Porteen"), (collectively "Defendants"), alleging violation of her civil rights and various state law claims arising from the issuance of an assault citation. (Doc. 5.)

Presently before the Court are Defendant Kunnath's Motion for Summary Judgment (Doc. 42) and Defendants Livingston and Porteen's Motion for Summary Judgment (Doc. 68). The motions are fully briefed and ripe for the Court's review.

/ / /

/ / /

1

Having considered the parties' submissions, the Court recommends that Defendants Kunnath, Livingston, and Porteen's motions for summary judgment (Docs. 42, 68) be **GRANTED**.

## I.      Factual Background[1]

On March 9, 2018, at approximately 9:27 p.m., Livingston Police Officers O'Neill and Hildebrand responded to a complaint that a dog had been barking outside a residence for two hours.  The residence belonged to Rebsom, a local attorney.  O'Neill could hear dogs barking from Rebsom's backyard, but the officers left shortly after arriving because no one was home.

At approximately 10:32 p.m., another resident called to report barking dogs at Rebsom's residence.  This time, O'Neill called Rebsom about the dogs.  Rebsom answered the call and said she was at home, but she hung up before O'Neill could discuss the complaints.

At approximately 10:45 p.m., O'Neill and Hildebrand returned to Rebsom's residence to discuss the complaints with her.  When the officers arrived, they could hear Rebsom yelling, "get out here you fucking bitch" and "fuck you."  They also heard a neighbor's screen door open and a male voice ask, "what is going on?"

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

When O'Neill and Hildebrand went to Rebsom's front door, she refused to open the door or speak with the officers.  Instead, she displayed both middle fingers through the glass door, and told the officers to "fuck off."  Rebsom can also be heard on the patrol vehicle dash cam recording yelling at the officers to "get a warrant mother fuckers."  Sergeant LaBaty, the on-duty supervisor, also arrived at the scene, and the officers informed Rebsom that she would be cited for disorderly conduct and keeping barking dogs.  But because Rebsom refused to speak with them, and was possibly intoxicated, they decided to issue the citations the next day.  As they were preparing to leave, Rebsom placed a 9-1-1 call that was transferred to LaBaty.  LaBaty advised Rebsom that they were leaving.  Rebsom hung up, again called 9-1-1, and left a voice message for the Chief of Police.  All officers left Rebsom's residence by 10:55 p.m.

When Livingston Police Officer Kunnath arrived for his shift the next morning on March 10, 2018, O'Neill briefed him on the events at Rebsom's residence the previous night.  O'Neill also requested that Kunnath serve Rebsom with the citations for keeping barking dogs and disorderly contact.

Kunnath also spoke to Rebsom's neighbor, Emily Greenwald, who wished to report an incident from the previous night.  Emily and her husband, Jason Greenwald, both provided oral and written statements regarding the incident.

3

Jason reported that around 10:30 p.m. the previous night he had been in his living room when he heard Rebsom screaming, "Emily Greenwald you fucking bitch, get your ass out here.  I am going to fucking kill you."  Jason stated he opened his back door and said, "excuse me," but Rebsom did not respond.  Jason reported he was fearful Rebsom may be approaching their home, so he picked up his phone, in case he needed to call the police, and went to his front window where he observed the police at Rebsom's residence.  Jason stated this was not the first time Rebsom had yelled obscenities late at night.

Emily reported that she was in a back bedroom when Rebsom was screaming.  She said she could hear shouting and barking dogs but could not make out what was said.  The next morning at 6:30 a.m., however, Jason advised Emily exactly what Rebsom had screamed at her hours before.  Both Emily and Jason reported being fearful for their safety due to Rebsom's behavior, and they wished that charges be filed against Rebsom for assault.

That day, Kunnath delivered the citations for disorderly conduct and keeping barking dogs.  He also cited Rebsom for assault, based on the Greenwald's complaint, in violation of Montana Code Annotated § 45-5-201(1)(d).

After she was issued the citations, Rebsom contacted Defendant Porteen, the city prosecutor, and asked that he dismiss the assault charge.  Porteen declined to

4

do so.  All charges were later dismissed, however, because Jason and Emily

Greenwald moved from Livingston and were unavailable to testify.

On March 10, 2020, Rebsom filed an Amended Complaint in this action.

(Doc. 5.)  Rebsom alleges civil rights claims under § 1983 for violation of the

Fourth and Fourteenth Amendment against Kunnath, O'Neill, and LaBaty (Count

I), Livingston (Count II), and Porteen (Count IV).  Rebsom further alleges state

law claims for respondeat superior against Livingston (Count III); malicious

prosecution against Kunnath, Porteen, and Livingston (Count V); actual

malice/punitive damages against Kunnath and Porteen (Count VI); negligence

against Porteen (Count VII); defamation/libel against Kunnath (Count VIII);

defamation/slander against Kunnath (Count IX); defamation/libel against O'Neill

(Count X); and defamation/slander against O'Neill (Count XI).

O'Neill and LaBaty previously filed motions for summary judgment (Docs.

38, 48), which were granted.  (Doc. 75.)  Kunnath now moves for summary

judgment on Rebsom's claims in Counts I, V, VI, VIII, and IX.  (Doc. 42.)

Livingston and Porteen move for summary judgment on Rebsom's claims in

Counts II-VII.  (Doc. 68.)

## II.   Legal Standard

Summary judgment is appropriate where the moving party demonstrates the

absence of a genuine issue of material fact and entitlement to judgment as a matter

of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

material fact is genuine if there is sufficient evidence for a reasonable factfinder to

return a verdict for the nonmoving party.  *Id.*  "Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec.*

*Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of

establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at

323.  If the moving party meets its initial responsibility, the burden then shifts to

the opposing party to establish that a genuine issue as to any material fact actually

exists.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).

In attempting to establish the existence of a factual dispute, the opposing

party must "go beyond the pleadings and . . . by 'the depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P.

56(e)).  The opposing party cannot defeat summary judgment merely by

demonstrating "that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. Discussion

### A. Kunnath's Motion for Summary Judgment

#### 1. Count I – § 1983 Claim Against Kunnath

Rebsom brings a § 1983 claim against Kunnath, alleging Kunnath violated her rights under the Fourth Amendment to be free from an unreasonable search and seizure of her person and home. (Doc. 5 at ¶¶ 1-2.) Kunnath argues Rebsom's § 1983 claim against him is barred by qualified immunity. (*See* Doc. 43.)

Qualified immunity shields state officials from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether an officer is entitled

7

to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016).  The court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The court must resolve the issue of qualified immunity "as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.'  Only where 'historical facts material to the qualified immunity determination are in dispute' should the district court submit the issue to a jury." *Conner*, 672 F.3d at 1131 (internal citations omitted).

Kunnath argues his conduct did not violate Rebsom's constitutional rights under the Fourth Amendment.  Rebsom counters that "Kunnath's acts of investigating, detaining, and arresting Rebsom lacked the requisite probable cause" and violated her "Fourth Amendment Constitutional Right to be free from Unreasonable Searches and Seizures."  (Doc. 59 at 6.)

The Court finds Kunnath is entitled to qualified immunity because his conduct did not violate Rebsom's Fourth Amendment constitutional rights.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S.

Const. amend. IV.  The "Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).   In addition, not all contact "between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).

In her Amended Complaint, Rebsom alleges that Kunnath "made an unreasonable search and seizure of Rebsom's person and home, assaulted, battered and falsely imprisoned her." (Doc. 5 at ¶ 2.)  In responding to Kunnath's motion for summary judgment as to her § 1983 claim, however, Rebsom does not address any of these allegations.  (Doc. 59 at 5-8.)  But lest there is any question regarding the merits of these allegations in her Amended Complaint—or whether there is *any* factual basis to support the allegations—it is undisputed that Kunnath was not one of the officers who responded to the Rebsom's home on March 9, 2018; he did not search her home; he did not attempt to enter her home; he did not search Rebsom; and he did not assault, batter, or falsely imprison her.[2]  Further, contrary to

---

[2] These allegations appear to relate to the officers responding to the barking dog complaints on the night of March 9, 2018.  (Doc. 5 at ¶¶ 14-22.)  It is undisputed, however, that Kunnath was not one of the officers who responded to Rebsom's home on March 9, 2018.  (Docs. 44 at ¶ 37; 60 at 1.)  Rebsom did not know which officers were at her home and only assumed Kunnath was present that night

suggestions made in Rebsom's brief, it is undisputed that Rebsom was not arrested. (Docs. 44 at ¶ 37; 60 at 1.)  Rebsom was not handcuffed or taken into custody; she was not deprived of her liberty or restrained in any manner.  She was only issued a citation.  Hence, Rebsom's Fourth Amendment claim is reduced to the argument that the issuance of the citation, without probable cause, constituted an unreasonable seizure.[3]

   But the mere issuance of a citation for a misdemeanor offense, without more, is not a seizure under the Fourth Amendment.  In *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003), for example, a misdemeanor complaint was filed, charging the plaintiff with delaying or obstructing a peace officer and trespassing.  After the charges were dismissed, the plaintiff filed an action alleging various federal and state claims, including a claim under 42 U.S.C. § 1983 for what

---

because he issued the assault citation the next day.  (Docs. 44 at ¶ 35; 44-13 at 118:22-25, 119:23-122:8.)  Rebsom admits she has no personal knowledge or evidence that Kunnath was at her home on March 9, 2018.  (Doc. 44-13 at 120:24-121:1, 121:11-13.)  Rebsom further admits that she has no evidence to support her assault, battery, or false imprisonment allegations against Kunnath.  (*See* Doc. 44-13 at 121:16-25) ("Q: When did Steve Kunnath assault you?  A: Which time?  Just kidding.  Q: Well, yeah.  Let's just confine it to March 9th or 10th.  A: He didn't.  Q: Okay.  And when did he batter you?  A: If he was not on my porch, then he didn't.  Q: Okay.  And falsely imprison you?  A: If he was not on my porch, he didn't on March 9th.")  Therefore, no genuine issue of material fact exists as to any purported assault, battery, or false imprisonment.

[3]  In her response brief, Rebsom also quotes the Fourth Amendment and highlights the language "no Warrants shall issue, but upon probable cause."  But no warrants were issued in this case.

she contended was an unlawful seizure under the Fourth Amendment.

The Ninth Circuit upheld dismissal of the claim, finding the plaintiff had not been subject to a seizure under the Fourth Amendment.  The Court pointed out that "[i]n this circuit we have held, not surprisingly, that a Fourth Amendment seizure occurs when a person is held in custody by arresting officers." *Id.* at 1193.  In *Karam*, however, the plaintiff "was not charged with a felony.  She was not required to report to anyone.  All she had to do was show up for court appearances and obtain permission from the court if she wanted to leave the state." *Id.* at 1194. The Court found the requirement to appear in court was "no more burdensome than the promise to appear a motorist makes when issued a traffic citation," and further found that her release conditions were "de minimus." *Id.*  Thus, the Court found "[n]o Fourth Amendment seizure occurred." *Id.  See also Britton v. Maloney*, 196 F.3d 24, 29 (1st Cir. 1999) (issuance of summons is not a seizure under the Fourth Amendment); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure'"); *Bielanski v. Cty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (rejecting plaintiff's claim that a summons alone constitutes a seizure and noting "[t]o hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim"); *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1156 (C.D. Cal. Jan. 12, 2010) (issuance of a citation

11

did not constitute a seizure); *Raiser v. City of Murrieta,* 2020 WL 4758563, at \*7 (C.D. Cal. Apr. 8, 2020) (recognizing "numerous courts have held that the mere issuance of a citation does not constitute a seizure").

Here, Rebsom was issued a citation for a misdemeanor which required that she appear in court.  Rebsom has raised no other facts to suggest that her liberty was otherwise restrained in any manner.  Accordingly, Rebsom was not "seized" under the Fourth Amendment when she was issued a citation for misdemeanor assault.  No Fourth Amendment violation occurred.

Rebsom also contends for the first time in her response brief that Kunnath violated her First Amendment rights by issuing the assault citation.  But Rebsom did not plead any First Amendment claim—or even mentioned the First Amendment—in her Amended Complaint.  Rebsom's argument, therefore, is inapplicable to the claims she actually asserted, and will be disregarded.  *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 12766467, at \*10 (C.D. Cal. Apr. 14, 2015) ("It is well-settled in the Ninth Circuit that parties generally cannot assert unpled theories for the first time at the summary judgment stage."); *Jack Palmer & Carwerks v. City of Missoula*, 2016 WL 247564, at \*4 (D. Mont. Jan. 20, 2016) (declining to consider plaintiff's newly-asserted, unpled constitutional violation in response to motion for summary judgment); *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural

second chance to flesh out inadequate pleadings.").

In sum, the Court finds based on the undisputed facts that Rebsom was not seized under the Fourth Amendment.  As such, Kunnath did not violate Rebsom's constitutional rights.  Therefore, Kunnath is entitled to summary judgment in his favor on Count I.

### 2.    Count V – Malicious Prosecution

Count V of the Amended Complaint is captioned as a malicious prosecution claim against Porteen and Livingston, but the allegations also reference Kunnath. It is, therefore, assumed the claim is also asserted against Kunnath.

Rebsom asserts her malicious prosecution claim under Montana law, which requires proof of six elements: (1) the commencement of a judicial proceeding against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing the proceeding; (3) the lack of probable cause; (4) the defendant was actuated by malice; (5) favorable termination of the judicial proceeding; and (6) the plaintiff suffered damage.  *Wagemann v. Robinson*, 2015 WL 3899226, at *11 (D. Mont. June 16, 2015) (quoting *White v. Maurier*, 2014 WL 1056335, at *4 (D. Mont., Mar. 18, 2014)) (quotations omitted).  A plaintiff's failure to offer proof of any one of these six elements will result in summary judgment for the defendant. *Robinson v. Morse*, 2008 WL 2640467, at *2 (D. Mont. July 2, 2008) (citing *Sherner v. Nat'l Case Loss Control Servs. Corp.*, 329 Mont. 247, 255 (2005)).

"Malicious prosecution claims are not favored by the law and the burden on the plaintiff is heavy." *Wagemann*, 2015 WL 3899226, at *11 (quoting *White v. State Fund*, 305 P.3d 795, 803 (Mont. 2013)) (quotations omitted).

Probable cause for purposes of malicious prosecution means "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious person to believe that the accused is guilty of the offense charged." *White v. State ex rel. Mont. State Fund*, 305 P.3d 795, 804 (Mont. 2013) (internal citations and quotations omitted). Probable cause "is determined under an objective standard on the basis of the facts known to the party initiating the legal action . . . ." *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10, 15 (Mont. 2002). The Montana Supreme Court has said the issue of probable cause is a jury question "when direct and circumstantial evidence related to the defendant's knowledge is susceptible to different conclusions by reasonable persons." *Id.* at 15. "Only when no evidentiary conflict exists and uncontroverted evidence admits only one conclusion does the existence of probable cause become a question of law." *Id.*

Under Mont. Code Ann. § 45-5-201(1)(d), "[a] person commits the offense of assault if the person . . . purposely or knowingly causes reasonable apprehension of bodily injury in another." Considering the totality of the circumstances known to Kunnath, the Court finds he had probable cause to believe Rebsom had

14

committed the crime of misdemeanor assault.

There is no material dispute as to the totality of the information known to Kunnath. [4] On March 10, 2018, Emily Greenwald called the Livingston police to report the prior night's incident and spoke to Kunnath. Kunnath took statements from both Emily and Jason Greenwald. He learned that at 10:30 p.m. the previous night, Jason heard Rebsom threaten his wife, screaming, "Emily Greenwald you fucking bitch, get your ass out here. I'm going to fucking kill you." (Doc. 44-6.) Jason was "shaken" by what he heard and "was concerned for [his] safety since it seemed to [him] that [Rebsom] was out of control and filled with rage." (*Id.*) Jason was worried, not only for his safety, but for Emily's and his children's

---

[4] Rebsom claims that Kunnath maliciously issued the assault citation and cites to her Affidavit in her Statement of Disputed Facts. (Doc. 60 at ¶¶ 43-44.) Rebsom's Affidavit, however, was not filed with her Response to Kunnath's Motion for Summary Judgment or her Statement of Disputed Facts on May 26, 2021. (*See* Docs. 59-60.) Rebsom submitted only the last page of an Affidavit. (*See* Doc. 60-1.) An Affidavit was filed on July 6, 2021 (Doc. 77), in response to Livingston and Porteen's Motion for Summary Judgment. There, Rebsom avers that Kunnath "altered the citation that he filed with the Court" without providing her an updated copy (Doc. 77 at ¶ 10), knew she was representing a defendant in an upcoming homicide trial, and "immediately fil[ed] the citation . . . [in] an effort to 'punish' [her] and undermine [her] credibility in the community related to the upcoming homicide trial." (*Id.* at ¶¶ 11, 14.) Rebsom's arguments, unsupported opinions, and conjecture lack evidentiary value. *Wagemann*, 2015 WL 3899226, at *13. *See also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting a summary judgment motion cannot be defeated by relying on conclusory allegations). But even if considered, the allegations and argument in Rebsom's Affidavit are insufficient to create any genuine issue of material fact as to probable cause. The events surrounding the threats made to Emily Greenwald are undisputed.

safety.  (*Id.*)

Emily reported that she was in a back bedroom at the time and could hear shouting and a dog barking, but could not hear what was said.  (*Id.*)  But upon learning of the threat, Emily told Kunnath she was "concerned for [her] safety and [her] family's safety" and decided to report the threat.  (*Id.*)

Rebsom surely acted purposely and knowingly as required by the assault statute.  "[A] person acts purposely with respect to a result . . . if it is the person's conscious object to . . . cause that result."  Mont. Code Ann. § 45-2-101(65).  "[A] person acts knowingly with respect to the result . . . when the person is aware that it is highly probable that the result will be caused by the person's conduct."  Mont. Code Ann. § 45-2-101(35).  By threatening to kill Emily, it was certainly reasonable to conclude that it was Rebsom's conscious object to cause Emily apprehension of bodily injury, and that there was a high probability that the threat would result in such apprehension.

Additionally, Rebsom was successful in doing so.  Both Emily and Jason reported that they were fearful for their safety and the safety of their family.  Whether a person reasonably apprehended bodily injury is determined by "that of a reasonable person under similar circumstances."  *State v. McCarthy*, 980 P.2d 629, 633 (Mont. 1999).  The "reasonable person" is an objective standard.  *State v. Martel*, 902 P.2d 14, 19 (Mont. 1995).  Again, Kunnath had an adequate basis to

16

conclude that Emily and Jason's fear was objectively reasonable under the circumstances.

Rebsom argues Kunnath lacked probable cause because she did not have contact with Emily, and Emily could not have reasonably apprehended bodily injury at the time the threats were made.  (Doc. 59 at 7.)  Rebsom argues that Jason's report to the police indicates Emily was asleep when Rebsom was shouting, and so, she could not have reasonably apprehended bodily injury.  While Jason's statement to police provides that Emily was asleep, Emily's own statement establishes that she was awake and heard shouting, though she could not hear what was being said.  (Doc. 44-6.)  Regardless, it is undisputed that Rebsom's specific threats were subsequently communicated to Emily.

The Montana Supreme Court has determined that a threat need not be communicated directly to the victim to cause reasonable apprehension of bodily injury.  It can be communicated to the victim by a third party.  This has been made clear in several cases considering an analogous statute regarding reasonable apprehension of serious bodily injury with a weapon, Mont. Code Ann. § 45-5-213(1)(b).  In *State v. Swann*, 160 P.3d 511, 513 (Mont. 2007), for example, the defendant made a threat to his wife over the phone that he was going to "put a bullet" in his wife and her work supervisor, who was not a party to the call.  But the threat was later conveyed to the supervisor.  *Id.*  The Montana Supreme Court

found this was sufficient to cause reasonable apprehension of serious bodily injury by use of a weapon in the supervisor under Mont. Code Ann. § 45-5-213(1)(b). *Id.* at 515. The Court found the statute was satisfied "merely by the existence of circumstances which [led] the victim to reasonable apprehend that he or she will be injured by a weapon. Direct perception is not necessary." *Id.* (internal citation omitted).

Similarly, in *State v. Smith,* 95 P.3d 137, 138 (Mont. 2004), the defendant called his estranged wife and threatened to kill her boyfriend with a gun. This information was conveyed to the boyfriend, who then also received two calls from the defendant threatening to kill him, although not indicating the use of a weapon. *Id.* The Montana Supreme Court again determined that the threat to the estranged wife was sufficient to charge the defendant with assault with a weapon. *Id.* at 140-41. The Court reiterated that § 45-5-213(1)(b) can be satisfied simply by circumstances which lead a person to reasonably apprehend serious bodily injury from a weapon. *Id.* at 142. *See also State v. Misner*, 763 P.2d 23, 26 (Mont. 1988) (finding sufficient evidence of reasonable apprehension of serious bodily injury with a weapon where defendant's brandishing of weapon was not observed by the victim but conveyed to the victim by a third party).

Here, although it is true that the interval between the threat and the communication to Emily is greater than in *Swann*, *Smith*, and *Misner*, all that is

18

necessary, as the preceding cases establish, is that Rebsom's threat to kill Emily created circumstances which led Emily to reasonably apprehend bodily injury.

Rebsom, nevertheless, asserts that the threat and apprehension of bodily injury must be contemporaneous.  She argues, without citation to authority, that it must be shown that "Emily Greenwald, either had: (1) contact with Rebsom; or (2) or [sic] was concerned that at the moment of the act, the alleged victim suffered reasonable apprehension of bodily injury." (Doc. 59 at 7.)  But that is not what the statute says.  It does not state the victim must apprehend bodily injury at the moment of the act.  In interpreting a statute, a court is "simply to ascertain and declare what is in the terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." *Bates v. Neva*, 339 P.3d 1265, 1268 (Mont. 2014) (quoting Mont. Code Ann. § 1-2-101).  "It is not [the court's] prerogative to read into a statute what is not there." *Id.*

Here, the statute does not have a temporal condition that requires concurrence of the defendant's act and the victim's apprehension of bodily injury.  Had the Montana legislature intended to impose such a requirement, it could readily have done so, and required that the victim reasonably apprehend imminent bodily injury.  *See, e.g.*, Mont. Code Ann. § 45-3-102, permitting use of force when a person reasonably believes it necessary for self-defense "against the other person's imminent use of unlawful force."

In addition, while Rebsom argues there was no probable cause for assault as to Emily, she does not address an assault as to Jason. A threat does not need to be directed at the victim in order to create reasonable apprehension of bodily injury. In *State v. Walsh*, 931 P.2d 42, 44 (Mont. 1997) (overruled on other grounds), for example, Chellsi, a ten-year-old, witnessed her mother's fiancé be beaten by two men while she and her mother were inside a car. Chellsi testified that, at the time, she was fearful the men were going to attack her and her mother, too. *Id.* at 46. The Montana Supreme Court affirmed an assault conviction as to Chellsi, finding that a rational jury could have found Chellsi reasonably apprehended bodily injury to herself under the circumstances, and noting that an assault victim need not be "the direct recipient of the defendant's actions." *Id.*

Similarly here, while Jason was not the direct target of Rebsom's threats, he heard Rebsom screaming late at night that she was going to kill his wife. He reports being "shaken" enough to get his phone ready in case he needed to call the police and to check if Rebsom was approaching their home. Jason also reported, "[a]t that point, I was concerned for my safety since it seemed to me that Ms. Rebsom was out of control and filled with rage however misguided." (Doc. 44-6.) The Court, thus, finds that Kunnath reasonably concluded that Rebsom also caused reasonable apprehension of bodily injury in Jason.

In sum, based on the totality of the circumstances, the "undisputed evidence

admits only the conclusion" that Kunnath "acted upon a reasonable belief" that Rebsom knowingly caused reasonable apprehension of bodily injury in Emily and Jason. *Plouffe*, 45 P.3d at 15. Rebsom's arguments that an assault must be contemporaneous and directly perceived are not supported by Montana law or the undisputed facts. Accordingly, since probable cause was present with respect to both Emily and Jason, Rebsom's claims for malicious prosecution necessarily fail.

### 3.    Count VI – Malice

Count VI of Rebsom's Amended Complaint is captioned as a claim for "Actual Malice against Defendant Porteen," but Kunnath is again mentioned in the allegations which follow. The claim for actual malice appears not to be an independent claim, but instead a claim for punitive damages based upon the alleged prosecution of Rebsom without probable cause. As discussed above, however, the Court has determined that Kunnath had probable cause to issue the assault citation. Therefore, Rebsom's claim for actual malice based on lack of probable cause necessarily fails.

### 4.    Counts VIII-IX – Defamation/Libel/Slander Claims Against Kunnath

Rebsom alleges defamation claims against Kunnath for libel (Count VIII) and slander (Count IX). Kunnath moves for summary judgment on the claims.

It is undisputed that the basis of Rebsom's defamation claims against Kunnath are the statements contained in the assault citation. (Doc. 44 at ¶ 51; 60 at

21

1.)  Libel is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation."  Mont. Code Ann. § 27-1-802.  Under Mont. Code Ann. § 27-1-803, slander is "a false and unprivileged publication other than libel that: (1) charges any person with a crime or with having been indicted, convicted, or punished for a crime."

First, Rebsom has presented no facts to show that the statements in the assault citation are false.  The citation provides, "Jason Greenwald heard neighbor Jami Rebsom scream "Emily Greenwald you fucking bitch get your ass out here. I'm going to fucking kill you."  (Doc. 44-7.)  It is undisputed that Rebsom said this, and thus, the allegedly defamatory statement cannot be false.

Second, Mont. Code Ann. § 27-1-804(1)-(2), provides that a privileged publication is "one made (1) in the proper discharge of an official duty; [or] (2) in any . . . judicial proceeding or in any other official proceeding authorized by law." In *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 430 (Mont. 1995), the Montana Supreme Court adopted the Restatement (Second) of Torts' approach and determined, "[a]n arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege."  The act of issuing a

22

citation, therefore, is also a privileged publication made in the proper discharge of an official duty.  Here, it is undisputed that Kunnath is a police officer authorized by law to respond to complaints, write reports, and issue citations; that he issued the assault citation to Rebsom in the discharge of this official duties as a Livingston Police Officer; and that the assault citation was made in a judicial proceeding or other official proceeding authorized by law.[5]

Because the citation does not contain any false statements and is a privileged publication, Rebsom's defamation claims necessarily fail.  Therefore, Kunnath is entitled to summary judgment as to Counts VIII-IX.

## B.    Defendants Livingston and Porteen's Motion for Summary Judgment

### 1.    Count II – § 1983 Claim Against Livingston

Rebsom has asserted a *Monell*[6] claim against Livingston based on Kunnath's implementation of a city policy or custom and/or due to Livingston's inadequate hiring and supervision of Kunnath.  (Doc. 5 at ¶¶ 70-75.)  Livingston moves for summary judgment as to this count on grounds that: (1) no civil rights violation occurred; and (2) even if there was a constitutional violation, Rebsom has failed to

---

[5] Pursuant to this Court's order, Kunnath's requests for admissions in his first and second discovery requests are admitted.  (Doc. 66 at 7.)  Thus, these issues are admitted and undisputed, as set forth in Requests for Admission 13, 16, and 21 of Kunnath's Second Set of Combined Discovery Requests to Plaintiff.  (Doc. 30-5)

[6] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

provide sufficient evidence to support a *Monell* claim under any of the avenues to municipal liability.

The Court has determined Kunnath's conduct in this case did not deprive Rebsom of a constitutional right.  As such,  Rebsom's § 1983 claim against Livingston necessarily fails.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.  Here, the municipal defendants cannot be held liable because no constitutional violation occurred."); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015) ("[M]unicipalities cannot be held liable when the individual police officer has inflicted no constitutional injury.").  Livingston is therefore entitled to summary judgment on Count II.

### 2. Count III – Respondeat Superior Claim Against Livingston

Rebsom seeks to hold Livingston vicariously liable for trespass and violation of privacy and malicious prosecution committed by Kunnath and malicious prosecution based on Porteen's continued prosecution.  (Doc. 76 at 23.) Livingston argues Rebsom's claims fail as a matter of law.

First, it is unclear when and how Kunnath trespassed or violated Rebsom's privacy.  As established, Kunnath was not present on the night of March 9, 2018. To the extent these allegations relate to Kunnath's issuance of the assault citation,

the Amended Complaint does not set forth any allegation that Kunnath committed a trespass or violated Rebsom's privacy in issuing the citation.  Nor does Rebsom raise any factual support or other argument in her response to the motions for summary judgment that Kunnath committed a trespass or violated Rebsom's privacy.  In addition, the Court has found probable cause existed for Rebsom's citation, and that Rebsom's claim for malicious prosecution is subject to summary judgment.  Therefore, Kunnath did not engage in any wrongful conduct that can be imputed to Livingston.

Moreover, to the extent Rebsom's "respondeat superior" claim is based on Porteen's action, prosecutorial immunity bars Rebsom's claim against Porteen.  A state prosecutor is entitled to absolute immunity from liability under § 1983 when they engage in activities "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution.  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Rebsom's allegations against Porteen stem from his initial refusal to dismiss the assault, an activity intimately associated with the judicial phase of the criminal process.  The citation was also supported by probable cause, and thus, a malicious prosecution claim against Porteen fails.

Livingston is, therefore, entitled to summary judgment on Count III.

/ / /

/ / /

### 3.      Count IV – § 1983 Claim Against Porteen

Porteen has moved for summary judgment as to Rebsom's § 1983 claim against him in Count IV of the Amended Complaint.  Porteen argues that the appropriate remedy for this claim is a state law, malicious prosecution claim, not a § 1983 claim.  (Doc. 69 at 11-13.)  In her response, Rebson agrees that the "Civil rights [sic] against Porteen found in Count IV of the Amended Complaint (excluding the negligence claims and malicious prosecution claims) and the City related to Porteen's actions should be dismissed."  (Doc. 76 at 23.)  Summary judgment should, therefore, be granted as to Count IV of the Amended Complaint.

### 4.      Count V – Malicious Prosecution Claim Against Porteen and Livingston

In Count V of the Amended Complaint, Rebsom also asserts a claim for malicious prosecution under Montana law against Porteen and Livingston.  The claim against Porteen is based on his alleged initiation and continuation of the prosecution against Rebsom without probable cause.  Her claim against Livingston is based on respondeat superior liability for Porteen's action in doing so.

As discussed above, however, the Court has found probable cause for the assault charge against Rebsom, and her malicious prosecution claim is subject to summary judgment on that basis alone.  In addition, as noted above, Porteen's actions in initiating and maintaining the prosecution of the assault charge against Rebsom are protected by prosecutorial immunity.  Therefore, Porteen has no

26

liability under Rebsom's malicious prosecution claim, and there is no liability to impute to Livingston.

Therefore, Rebsom's claim in Count V against Porteen and Livingston is subject to summary judgment.

> ### 5. Counts VI and VII – Actual Malice and Negligence Claims Against Porteen

Rebsom has alleged two additional claims against Porteen for actual malice/punitive damages (Count VI), and negligence (Count VII). Both of these claims are based on alleged lack of probable cause to initiate and maintain the charge against Rebsom. As determined above, probable cause existed, and Porteen's decision to prosecute Rebsom is protected by prosecutorial immunity.

Summary judgment is, therefore, appropriate as to Counts VI and VII.

## IV.   Conclusion

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant Steve Kunnath's Motion for Summary Judgment (Doc. 42) be **GRANTED**; and

2.     Defendants City of Livingston and Jay Porteen's Motion for Summary Judgment (Doc. 68) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 25th day of February, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge